IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KAJEET, INC.,

              Plaintiff,

     v.

MOSYLE CORPORATION,

              Defendant.

C.A. No. 1:21-cv-00006-MN

**JURY TRIAL DEMANDED**

## DEFENDANT MOSYLE CORPORATION'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Nitika Gupta Fiorella (#5898)
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19899
(302) 652-5070
fiorella@fr.com

Lawrence Kolodney
Joy B. Kete
FISH & RICHARDSON P.C.
1 Marina Park Drive
Boston, MA 02210
(617) 542-5070
kolodney@fr.com
kete@fr.com

***Attorneys for Defendant, Mosyle Corporation***

Dated:  February 25, 2020

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................1

I.      Nature and Stage of Proceedings ...........................................................................1

II.     Summary of Argument ...........................................................................................2

III.    Statement of Facts ..................................................................................................3

        A.      The '559 Patent ...........................................................................................3

        B.      Kajeet's Direct Infringement Allegations..................................................7

        C.      Kajeet's Indirect Infringement Allegations ...............................................7

        D.      Kajeet's Willful Infringement Allegations ................................................9

IV.     Argument ................................................................................................................9

        A.      Kajeet's Direct Infringement Claims Should Be Dismissed...................10

                1.      Kajeet Does Not Allege the Accused Mosyle Products
                        Practice Every Limitation of Any Asserted Claim .....................11

                2.      Kajeet Does Not Allege that Mosyle Performed All
                        Steps of Claim 27.......................................................................12

                3.      Kajeet's Direct Infringement Allegations Are Too
                        Vague to Provide Notice of How and Why Mosyle
                        Allegedly Infringes ....................................................................14

        B.      Kajeet's Indirect Infringement Claims Should Be Dismissed ................15

                1.      Kajeet's Indirect Infringement Claims Fail Because
                        Direct Infringement Improperly Pled..........................................16

                2.      Kajeet's Indirect Infringement Fail Because No Alleged
                        Pre-Suit Notice...........................................................................16

                3.      Kajeet's Boilerplate Allegations Do Not State a Claim
                        for Induced or Contributory Infringement ..................................17

        C.      Kajeet's Willful Infringement Claims Should Be Dismissed.................19

        D.      Kajeet's Claim for Past Damages Should Be Dismissed.........................20

V.      Conclusion ............................................................................................................20

i

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*10x Genomics, Inc. v. Celsee, Inc.*,
    No. 19-862-CFC-SRF, 2019 WL 5595666 (D. Del. Oct. 30, 2019).................................10, 13

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
    876 F.3d 1350 (Fed. Cir. 2017)...........................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................................9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................................9

*In re Bill of Lading Transmission and Processing Sys. Patent Litigation*,
    681 F.3d 1323 (Fed. Cir. 2012)..........................................................................19

*Boston Scientific Corp. v. Nevro Corp.*,
    415 F. Supp. 3d 482 (D. Del. 2019)...............................................................10, 14

*Commil USA, LLC v. Cisco Sys., Inc.*,
    135 S.Ct. 1920 (2015).......................................................................................15

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
    424 F.3d 1293 (Fed. Cir. 2005)..........................................................................15

*Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*,
    No. 18-098 (MN), 2018 WL 6629709 (D. Del. Dec. 19, 2018) .......................18, 19

*Dynamic Data Techs., LLC v. Brightcove Inc.*,
    No. 19-1190-CFC, 2020 WL 4192613 (D. Del. July 21, 2020) ............................16

*Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*,
    No. C 17-03363-JWS, 2018 WL 5606487 (N.D. Cal. Sept. 14, 2018) ............17, 18

*Express Mobile, Inc., v. DreamHost LLC*,
    No. 1:18-cv-01173-RGA, 2019 WL 2514418 (D. Del. Jun. 18, 2019) ..................20

*Fujistu Ltd. v. Netgear Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010)..........................................................................13

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011)..........................................................................................15

*Kajeet, Inc. v. Qustodio, LLC*,
    No. SA CV18-01519 (PLAx) (C.D. Cal. Nov. 1, 2019)........................................6

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
    566 F.3d 1049 (Fed. Cir. 2009)...............................................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...............................................................................13

*Mallinckrodt Inc. v. E-Z-Em Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009)........................................................................16

*NNCrystal US Corp. v. Nanosys, Inc.*,
    No. 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020) ...............................19

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
    No. 17-506-LPS-CJB, 2017 WL 5501489 (D. Del. Nov. 16, 2017) ..........10, 11, 14

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299 (Fed. Cir. 2006)...............................................................................13

*Pragmatus Telecom, LLC v. Ford Motor Co.*,
    No. 12-92-RGA, 2012 WL 2700495 (D. Del. July 5, 2012) ...................................19

*Prowire LLC v, Apple Inc.*,
    No. 17-223, 2017 WL 3444689 (D. Del. Aug. 9, 2017)...........................................10

*SIPCO, LLC v. Streetline, Inc.*,
    230 F. Supp. 3d 351 (D. Del. 2017)...................................................................10, 14

*SuperInterconnect Techs. LLC v. HP Inc.*,
    No. 19-0169-CFC, 2019 WL 6895877 (D. Del. Dec. 18, 2019) .............................14

*Uniloc 2017 LLC v. ZenPayRoll, Inc.*,
    No. 19-1075-CFC-SRF, 2020 WL 4260616 (D. Del. July 23, 2020).......................11

*Valinge Innovation AB v. Halstead New England Corp.*,
    No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29, 2018).......................19

*Via Vadis, LLC v. Skype, Inc.*,
    No. 11-507, 2012 WL 261367 (D. Del. Jan. 27, 2012) ..........................................14

*Xpoint Techs., Inc. v. Microsoft Corp.*,
    730 F. Supp. 2d 349 (D. Del. 2010).........................................................................16

*Zapfraud, Inc. v. Barracuda Networks, Inc.*,
    No. 19-1687-CFC-CJB, 2020 WL 5646375 (D. Del. Sept. 22, 2020)......................16

**Statutes**

35 U.S.C. § 271(b) ...............................................................................................................8, 15

35 U.S.C. § 271(c) ..........................................................................................................8

## <u>INTRODUCTION</u>

Kajeet's cookie-cutter patent infringement complaint should be dismissed because it utterly fails to serve its fundamental purposes: to demonstrate that there is a specific factual basis for its infringement allegations, and to provide fair notice of that basis to Mosyle.  While Kajeet accuses Mosyle of directly, indirectly, and willfully infringing at least claim 27 of U.S. Patent No. 8,667,559 ("the '559 patent"), the complaint lacks any description of the specific features in the accused Mosyle products that are supposedly infringing.   Moreover, while claim 27 is a method claim, the complaint lacks any allegation that the claimed method steps are actually performed by Mosyle (or anyone else).  These shortcomings are fatal to Kajeet's direct infringement claim.

Kajeet's indirect and willful infringement claims are similarly defective.  In addition to the deficiencies in Kajeet's direct infringement pleading, these claims suffer from a further flaw—the lack of any allegation that Mosyle was aware of the '559 patent prior to the filing of this action.  Such awareness of the asserted patent is an element of both indirect and willful infringement, and Kajeet's failure to plead this element provides an additional basis for dismissing those claims.

Finally, Kajeet's claim for past damages must be dismissed because it fails to allege any facts showing that it has complied with the patent statute's marking requirement, which is a necessary element of an infringement claim for past damages.

## I.      NATURE AND STAGE OF PROCEEDINGS

Kajeet filed its complaint for patent infringement against Mosyle on January 4, 2021 (D.I. 1).  Kajeet's complaint accuses Mosyle of infringing "at least" claim 27 of the '559 patent. Kajeet asserts that "[t]he Accused Products of Mosyle include all versions of the Mosyle Manager product and corresponding applications including Mosyle Business and ScreenGuide,

1

as well as products that have the same or similar functionality" (collectively, the "Accused Products"). (*Id*. at ¶ 21.) In addition to direct infringement, Kajeet alleges induced, contributory, and willful infringement by Mosyle. (*Id*. at ¶¶ 40, 42-43.) On January 19, 2021, the Court granted the parties' stipulation (D.I. 7) extending the time for Mosyle to move, answer, or otherwise respond to the complaint to February 25, 2021.

Kajeet has asserted the '559 patent against several defendants in this Court. Notably, Kajeet sued Gryphon Online Safety, Inc. ("Gryphon") on December 30, 2019 and NortonLifeLock Inc. ("Norton") on October 2, 2020 for infringement of the '559 patent (Case Nos. 1:19-cv-02370-MN, 1:20-cv-01339-MN).[1] On February 23, 2021, the Court granted Gryphon's motion to dismiss with respect to direct infringement based on grounds similar to those raised in this brief. On January 4, 2021, Kajeet also filed suit against CyberReef Solutions Inc. ("CyberReef") and McAfee Corp. ("McAfee"), also alleging infringement of the '559 patent (Case Nos. 1:21-cv-4-MN, 1:21-cv-5-MN).

## II.     SUMMARY OF ARGUMENT

1.     Kajeet's direct infringement claim should be dismissed for failure to satisfy the *Iqbal / Twombly* pleading standard. This is so for two distinct reasons. First, the claim should be dismissed because Kajeet's complaint accuses Mosyle's complex software products of infringing the '559 patent without identifying any specific features of those products, or linking those features to the required elements of any asserted claim. As such, the complaint fails to establish a plausible factual basis for Kajeet's direct infringement allegation and does not provide fair notice to Mosyle regarding the basis for this claim. Second, the direct infringement claim should also be dismissed because the complaint only purports to show direct infringement of method

---

[1]     Kajeet also asserts U.S. Patent No. 7,899,438 against Gryphon.

claim 27, yet lacks any allegation that Mosyle or its agents performed all of the steps of the claimed method.  Such an allegation is essential to plead infringement of a method claim, and its absence from Kajeet's complaint renders the complaint ineffective to state a claim.

2.    Kajeet's indirect infringement claims (induced and contributory infringement) should also be dismissed.  Because proof of indirect infringement requires proving an act of direct infringement, Kajeet's failure to properly plead direct infringement is also fatal to its indirect infringement claims.  Kajeet's indirect infringement claims are also flawed because Kajeet also does not allege pre-suit knowledge by Mosyle of the '559 patent, which is a necessary element of indirect infringement.  Finally, Kajeet's indirect infringement allegations do not meet the *Iqbal / Twombly* pleading standard because they are high-level, unspecific, and entirely unsupported by any citations or evidence.

3.    Kajeet's willful infringement claim should be dismissed because, without any allegation of pre-suit knowledge of the '559 patent by Mosyle, Kajeet cannot plead facts showing that Mosyle acted with the knowledge required to state a claim for willful infringement.

4.    Any claim for past damages should be dismissed due to Kajeet's failure to allege compliance with the marking statute in the complaint.

## III.   STATEMENT OF FACTS

### A.    The '559 Patent

The '559 patent issued on March 4, 2014 and is titled "Feature Management of a Communication Device."  (D.I. 1, Ex. A.)  According to the '559 patent, as the capabilities of modern communication devices have expanded, there "may be a need or desire to regulate how that communication device can be used and to determine who will pay for what goods and services."  (*Id.* at 1:56-58.)  Specifically, the '559 patent identifies that parents, school administrators, and employers may want the ability to control and/or restrict how and when

3

children, students, and employees use their cellphones or other electronics devices. (*Id.* at 1:66-2:26.)

The system disclosed in the '559 patent purports to solve this problem by providing, in a cellular telephone network, a "policy enforcement point (PEP) 28" that contains policies that determine whether a particular phone may be used for particular purposes. (*Id.* at 8:36-40.) The PEP works in conjunction with a "policy decision point (PDP) 29," which "maintains or stores a list of policies that have been established to control the features and functions of the mobile [device] and decides, based on those policies, to either accept or reject" any attempt by the phone to request service from the network. (*Id.* at 8:40-59.) As can be seen in Figure 2, both the PEP and PDP are parts of the telephone network, and neither resides on the mobile station 10 (i.e., the mobile phone or other user device). (*Id.* at Fig. 2.)



**FIG. 2**

It is this remote enforcement of a remotely stored policy, by accepting or rejecting attempts by the mobile device to communicate over the network, that provides the supposed

advantage of the invention: a tamper-proof ability to control network access by a device.  Kajeet repeatedly emphasizes this point in its complaint when describing the alleged benefits of the claimed invention and how it differed from the prior art:

- "The Asserted Patent therefore recognizes that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance *with a scheme that prevents access to them by the user of the device*, who may have poor judgment or be motivated to otherwise misused the communication device."[2]  (D.I. 1 at ¶ 17.)

- "Application of use decisions based upon *a policy stored remote from the controlled computing device* represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society."  (*Id.* at ¶ 19.)

- "These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision 'being *based on a policy stored at the server*...,' and that 'the communication being enabled or disabled *without storing the policy on the computing device*.'"  (*Id.* at ¶ 34.)

- "These limitations mandate that the decision applied to effect control over the computing device is *based on a policy stored at a server remote to the computing device* …. These limitations capture the distributed architecture concept not well-understood, routine, or conventional in the art for effecting feature management on a computer device including that *the server storing the policies upon which decisions are based being meaningfully apart from the computing device*.  This arrangement resulted in improved operation through at least increase resilience to undesirable access to policies to manipulate or delete them."  (*Id.* at ¶ 35.)

- "These claims require storing usage policies upon which decisions are based *at a server remote from the computing device*, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods.  Prior art control was not premised on application of decisions based upon policies stored at the server level.  Instead, *the prior art applied decisions based on policies set up on the computing device itself* and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely."  (*Id.* at ¶ 38.)

The role of the remote server in granting or denying requests to communicate based on a policy stored at the server is also expressly described in asserted claim 27:

---

[2]   All emphases throughout this brief added unless otherwise noted.

27.  A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising:

> *sending to a server* a request to communicate with a *remote* computing device over the communication network;
>
> receiving in real-time *from the server a decision* granting or denying the request, the decision being based on a *policy stored at the server* and configured by an administrator; and
>
> enforcing the decision by enabling a communication with the *remote* computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled *without storing the policy on the computing device*.

(D.I. 1, Ex. A at claim 27; D.I. 1 at ¶¶ 37-39 (quoted above)).  In addition to requiring a remote server that regulates communication requests from a device based on a policy, the claim further requires that (i) *the server* applies the policy to provide, "*in real-time*," a "*decision[s] granting or denying*" such requests, and (ii) that *the policy* that determines whether to grant or deny a request *is not stored on the computing device itself.*

This plain meaning is further confirmed by the court's claim construction order in *Kajeet, Inc. v. Qustodio, LLC*, No. SA CV18-01519 (PLAx) (C.D. Cal. Nov. 1, 2019) at 13 (attached hereto as Exhibit A).  In concluding that claim 27 of the '559 patent should be given its ordinary meaning, the court observed that "[t]he requirement that *both storing a policy and enforcing a decision occur remotely* is apparent from the express claim language . . . . Because *the parties cannot reasonably dispute* that the plain claim language that shows *that the claimed policy and claimed enforcement step in Claim 27 of the '559 Patent occur remote from the computing device*, no further construction of these claim terms is necessary."  *Id.*

6

### B.      Kajeet's Direct Infringement Allegations

Count I of the complaint is Kajeet's claim of patent infringement.  While this part of the complaint summarizes the requirements and alleged benefits of claim 27 of the '559 patent, it lacks any description of how the Accused Products work, nor does it include any attempt to map features of the Accused Products to the limitations of any asserted claim.

Instead, the only discussion of the Accused Products appears earlier in the complaint, as part of a section titled "Background and Facts."  (D.I. 1 at ¶¶ 21-27).  But even here, the description of the Accused Products is nebulous and imprecise, lacking entirely any concrete description of identifiable product features, quotations from product literature, or screen shots of product display screens.  Kajeet also makes no attempt to tie any of its purported descriptions of the Accused Products to any specific claim language.  In short, the complaint is utterly lacking in information from which Mosyle could understand the nature of the allegations against it.

### C.      Kajeet's Indirect Infringement Allegations

Kajeet alleges induced infringement and contributory infringement by Mosyle, but its allegations are entirely generic and conclusory; the complaint lack any specific assertions concerning Mosyle or its business that would show that Mosyle induces or contributes to direct infringement of any claim by others.  The entirety of allegations purporting to show indirect infringement are contained in the following four paragraphs of the complaint:

- "Mosyle provides instructions to its customers and users of the Accused Products demonstrating how to install, set up, and use each to manage computing devices connected to a communications network.  Such instructions are provided in the form of, at least, Mosyle's online support site and product guides.  These resources provide instructions and tutorials directed to end users of the Accused Products demonstrating use thereof in manners that infringe the Asserted Patent.  Use of the Accused Products in accordance with these instructions constitutes direct infringement of the Asserted Patent by end users of the Accused Products."  (*Id.* at ¶ 28.)

- "Mosyle has had actual knowledge of the Asserted Patent since at least the filing of this complaint, therefore, and has had actual knowledge of Kajeet's claims of

7

infringement relating to the Accused Products since that time. Upon information and belief, Mosyle continues to make, use, and sell the Accused Products, including ongoing subscriptions, to its customers." (*Id.* at ¶ 29.)

- "Mosyle actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b). A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claim 27 of the '559 Patent. Mosyle knows that the Accused Products are especially designed for and marketed toward infringing use by Mosyle's customers, to implement feature management of computing devices. Mosyle has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Mosyle provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claim 27 of the '559 Patent. These instructions are provided by Mosyle as user manuals and online content made available by Mosyle through its website. Such conduct by Mosyle was intended to and actually did result in direct infringement by Mosyle's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States." (*Id.* at ¶ 42.)

- "Mosyle contributes to the infringement of at least claim 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c). The Accused Products are especially designed for controlling use of computing devices in the manner described above. Upon information and belief, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network. Setup and use of the Accused Products by Mosyle's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claim 27 of the '559 Patent." (*Id.* at ¶ 43.)

In none of these paragraphs does Kajeet (i) identify any specific instructions that allegedly induced Mosyle's customers to use the Accused Products in an infringing manner, (ii) provide any factual basis for concluding that Mosyle specifically intended to cause its customers to infringe, (iii) identify any specific components that are especially made or adapted to infringe, (iv) set forth any facts to support its assertion that these unspecified components have no substantial non-infringing uses, or (v) identify any facts to support its contention that Mosyle knew that these unspecified components have no non-infringing uses and were especially made

or adapted to infringe.  Moreover, as detailed below, Kajeet only alleges that Mosyle has had knowledge of the '559 patent "since at least the filing of this complaint" (*id.* at ¶ 29), yet it does not allege any facts suggesting that Mosyle committed acts of induced or contributory infringement since the date the complaint was filed.

> **D.  Kajeet's Willful Infringement Allegations**

Kajeet's willful infringement allegations are contained in the following two paragraphs from the complaint.  Here too, the allegations are entirely conclusory, and fail to provide any specific factual basis for Kajeet's claim:

- "Mosyle has had actual knowledge of the Asserted Patent since at least the filing of this complaint, therefore, and has had actual knowledge of Kajeet's claims of infringement related to the Accused Products since that time."  (*Id.* at ¶ 29.)

- "Mosyle has had actual knowledge of the existence of the '559 Patent since at least the filing of this complaint.  As such, Mosyle's infringement of the '559 Patent has been willful since at least that time."  (*Id.* at ¶ 40.)

## IV.  <u>ARGUMENT</u>

It is well established that a plaintiff must allege factual support for each element of the claim to adequately plead a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  In this regard, merely reciting the elements of a claim and providing "conclusory statements" without further factual support is insufficient.  *Id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The purpose of these pleading requirements is (i) to show that the plaintiff has some basis for its allegations, and (ii) to put the defendant on fair notice of the claims at issue.  *See id.* at 698; *Twombly*, 550 U.S. at 555 (explaining a complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests" (citation omitted)).

### A.     Kajeet's Direct Infringement Claims Should Be Dismissed

Courts apply the *Iqbal / Twombly* standard when evaluating the sufficiency of direct

infringement claims. *Prowire LLC v, Apple Inc.*, No. 17-223, 2017 WL 3444689, at *2 (D. Del.

Aug. 9, 2017). To meet these standards, a patent infringement complaint must "plead[] facts that

plausibly indicate that Defendant's accused products practice **each of the limitations** found in

the [] asserted claims …. After all, if it is not plausible, after reading the complaint, that the

accused infringer's product reads on a limitation in the one asserted claim from a patent-in-suit,

then it is not plausible that the accused infringer actually infringes the patent claim (or the

patent)." *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 WL

5501489, at *1 (D. Del. Nov. 16, 2017) (citation omitted), *report and recommendation adopted*,

2018 WL 11182741 (D. Del. Jan. 3, 2018).

Accordingly, "a patentee cannot meet its obligation to assert a plausible claim of

infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim

element and then baldly stating (without more) that an accused product has such an element." *Id.*

at *2; *SIPCO, LLC v. Streetline, Inc.*, 230 F. Supp. 3d 351, 353 (D. Del. 2017) (dismissing

complaint which "contain[ed] no attempt to connect anything in the patent claims to anything

about any of the accused products"); *Boston Scientific Corp. v. Nevro Corp.*, 415 F. Supp. 3d

482, 489 (D. Del. 2019) (explaining "a plaintiff must generally do more than assert that the

product infringes the claim; it must show *how* the defendant plausibly infringes by alleging some

facts connecting the alleging infringing product to the claim elements" (emphasis in original)).

Moreover, "[t]o plead a cause of action for direct infringement of a method claim, the

complaint must allege that the accused infringer perform[ed] all the steps of the claimed method,

either personally or through another acting under his direction or control." *10x Genomics, Inc. v.*

*Celsee, Inc.,* No. 19-862-CFC-SRF, 2019 WL 5595666, at *11 (D. Del. Oct. 30, 2019) (citation omitted), *report and recommendation adopted*, 2019 WL 6037558 (D. Del. Nov. 14, 2019).

### 1.     Kajeet Does Not Allege the Accused Mosyle Products Practice Every Limitation of Any Asserted Claim

Kajeet's direct infringement claim should be dismissed because the complaint lacks any explanation of how Mosyle's products meet each of the limitations of an asserted claim.  *See Uniloc 2017 LLC v. ZenPayRoll, Inc.*, No. 19-1075-CFC-SRF, 2020 WL 4260616, at *2 (D. Del. July 23, 2020) ("[T]o survive a 12(b)(6) motion, a complaint alleging direct infringement must contain facts plausibly indicating that a defendant's accused product practices ***each limitation*** of the asserted patent[.]"); *North Star Innovations*, 2017 WL 5501489 at *1 (D. Del. Nov. 16, 2017) ("In order to adequately allege direct infringement here, Plaintiff needs to have pleaded facts that plausibly indicate that Defendant's accused products practice ***each of the limitations*** found in the two asserted claims[.]").

In essence, Claim 27 has two requirements: (i) sending to a server a "request to communicate with a remote computing device" and receiving a "real-time" decision from the server granting or denying the request; and (ii) granting or denying the request based on a policy that is "stored at the server" and not stored "on the computing device."  (D.I. 1, Ex. A at claim 27.)  Yet the complaint is completely devoid of any explanation of how usage of Mosyle's Accused Products results in either of these requirements being met.

***First***, the complaint lacks any explanation of how usage of any Mosyle Accused Product causes a request to communicate with a remote computing device to be sent to a server or a decision in real-time allowing or denying the request to be received.   At most the complaint alleges (without identifying any specific product features) that "local agent software … causes the managed device to generate or direct ***requests for uses*** of the device."  (D.I. 1 at ¶ 26.)  But

generating a request to use a device is not the same as "***sending to a server** a **request to communicate with a remote computing device***" as required by the claim.  Moreover, the only discussion in the complaint regarding a "real-time" decision in connection with the Accused Products is the vague assertion that "[a]pplication of policies yields ***real time decisions*** defining what device features and network content are useable or accessible by a managed device depending on the user profile associated with the managed device."  (*Id.* at ¶ 25.)  But even this statement lacks an allegation that ***real-time decisions granting or denying requests to communicate*** are made ***on a server*** (and received on the computing device) as required by claim 27.  That allegation is missing because that is not how the Accused Products work.

*Second*, the complaint is devoid of any explanation of how the Mosyle Accused Products supposedly enforce a policy stored on a server "without storing the policy on the computing device," as required by claim 27.  To the contrary, the complaint alleges that "***local agent software*** [i.e., software stored on the computing device] effects control of the device."  (*Id.* at ¶ 23).  But this sort of local access control is precisely the opposite of the claim's requirement that real-time decisions granting or denying requests to communicate be made ***at a remote server***, based on a policy "stored at the server" and not "on the computing device."  Moreover, while the complaint alleges the existence of supposed "master policies" stored on Mosyle's servers (*id.* at ¶ 23), the complaint lacks any allegation that any real time decisions granting or denying access to a remote computing device are made using these "master policies," and thus that they could be the claimed "policy stored on the server."

## 2.    Kajeet Does Not Allege that Mosyle Performed All Steps of Claim 27

Kajeet's direct infringement claim should also be dismissed with respect to claim 27— which is a method claim—because the complaint does not allege that Mosyle practices each step of the claimed method.  "To plead a cause of action for direct infringement of a method claim,

the complaint must allege that the accused infringer perform[ed] all the steps of the claimed

method, either personally or through another acting under his direction or control." *10x

Genomics*, 2019 WL 5595666 at *11 (citation omitted). "A method claim is directly infringed

only by one practicing the patented method." *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566

F.3d 1049, 1060-61 (Fed. Cir. 2009) (citation omitted). It "is not enough to simply show that a

product is capable of infringement; the patent owner must show evidence of specific instances of

direct infringement." *Fujistu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010).

Moreover, sales of a product "alone cannot infringe the patent" and infringement occurs "only

when someone performs the method using" the product. *Lucent Techs., Inc. v. Gateway, Inc.*,

580 F.3d 1301, 1317 (Fed. Cir. 2009).

Kajeet never asserts that Mosyle or anyone else has performed all the steps in claim 27.

The only potentially relevant allegation in the complaint is in paragraph 41, which states:

> Mosyle, without authority, consent, right, or license, and in direct infringement of
> the '559 Patent, makes, has made, uses, and sells the Accused Products which
> infringe at least claim 27 of the '559 Patent, among others. In additional, Mosyle's
> quality testing and demonstrations of operation of the Accused Products to manage
> use of computing devices directly infringe, either literally or under the doctrine of
> equivalents, at least claim 27 of the '559 Patent.

(D.I. 1 at ¶ 41.) But "makes, has made, uses, and sells the Accused Products" is insufficient to

plead infringement of a method claim. *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311

(Fed. Cir. 2006) ("Method claims are only infringed where the claimed process is performed, not

by the sale of an apparatus that is capable of infringing."). Kajeet's direct infringement claim

should be dismissed.[3]

---

[3]     Even if Kajeet's complaint provided a coherent explanation of how use of Mosyle's
product could infringe claim 27, which it does not, it would still be deficient because it lacks any
explanation of how Mosyle or its agents perform each step of the claimed method. The method
steps of claim 27 are self-evidently performed by the "computing device" that is being controlled

### 3. Kajeet's Direct Infringement Allegations Are Too Vague to Provide Notice of How and Why Mosyle Allegedly Infringes

Even where a complaint does allege that each claim limitation is met by the accused products (which Kajeet's complaint does not), courts grant motions to dismiss if the allegations are too conclusory to put the defendant on notice regarding how and why they supposedly infringe. For example, courts in this district frequently dismiss complaints that simply parrot the claim language and then include a conclusory statement that the defendant infringes. *See, e.g.*, *SIPCO*, 230 F. Supp. 3d at 353 (dismissing direct infringement claims where plaintiff alleged "here are ten patents we own," "you sell some products, which we have identified," and "the sales of your products infringe our patents"); *North Star Innovations*, 2017 WL 5501489 at *1 (dismissing direct infringement allegations because the complaint "does little more than parrot back the language of [the asserted] claim elements and then states that the accused product is comprised of such elements"). Similarly, courts in this district dismiss complaints that lack factual allegations describing how or why the defendant infringes. *See, e.g.*, *Via Vadis, LLC v. Skype, Inc.*, No. 11-507, 2012 WL 261367, at *2 (D. Del. Jan. 27, 2012) (dismissing direct infringement claims because "[t]here are simply no factual allegations advising Defendants how or why their products infringe on Plaintiff's patents"); *Boston Scientific*, 415 F. Supp. 3d at 490 (dismissing direct infringement claims because plaintiff "makes no attempt to connect specific components of the accused systems to elements of the asserted claims"); *SuperInterconnect Techs. LLC v. HP Inc.*, No. 19-0169-CFC, 2019 WL 6895877, at *2, n.3 (D. Del. Dec. 18, 2019) (noting that where "the technology is far from simple" conclusory allegations fail to "provide fair notice of [the] infringement claims").

---

according to the claimed policy, and not by the remote server supposedly operated by Mosyle. Thus, even if Mosyle provided a policy enforcement server of the type required by the claim, which is does not, that fact would still not entail Mosyle performing all of the steps of claim 27.

As in these cases, Kajeet's complaint does not contain the how and why that is necessary to state a claim for direct infringement.  In fact, Kajeet's only discussion of the Accused Products is contained in the "Background and Facts" section of the complaint; Mosyle's products are not mentioned anywhere in the description of Count I (which is Kajeet's claim for patent infringement).  The complaint's description of the Accused Products is high-level and conclusory—it contains no citations, quotations, or evidence of any kind to support Kajeet's vague characterizations of how Mosyle's product work.  Kajeet also does not include any claim charts with the complaint, nor does it attempt to map each limitation of claim 27 of the '559 patent to the Accused Products.  Mosyle is therefore left without notice of the specific aspects of its products that are accused of infringement.  This is insufficient to state a claim under the *Iqbal / Twombly* standard, and as such, Kajeet's direct infringement claims should be dismissed.

### B.      Kajeet's Indirect Infringement Claims Should Be Dismissed

To state a claim for induced infringement, a plaintiff must allege facts showing that the defendant "knew of the patent and knew as well that the induced acts constitute patent infringement."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015) (citation omitted); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement").  To state a claim for contributory infringement, a plaintiff must allege facts showing that the defendant "knew that the combination for which its components were especially made was both patented and infringing and that defendant's components have no substantial non-infringing uses."  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (citation omitted).

       **1.**       **Kajeet's Indirect Infringement Claims Fail Because Direct Infringement Improperly Pled**

As an initial matter, Kajeet's indirect infringement allegations fail because Kajeet has not alleged facts showing direct infringement of any claim (as detailed above). *See Mallinckrodt Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349, 354 (D. Del. 2009) ("Claims for indirect infringement cannot exist in the absence of direct infringement."). For the reasons discussed above, Kajeet makes no such showing here and its indirect infringement claims should be dismissed.

       **2.**       **Kajeet's Indirect Infringement Fail Because No Alleged Pre-Suit Notice**

Kajeet's indirect infringement claims also fail because the complaint lacks any allegation that Mosyle was aware of the '559 patent prior to the filing of the complaint, and thus fails to provide a plausible factual basis for concluding that Mosyle had engaged in indirect infringement as of the time the complaint was filed. Kajeet's failure to allege pre-suit knowledge of the patents is thus fatal to its indirect infringement claims, which should be dismissed. *See Zapfraud, Inc. v. Barracuda Networks, Inc.*, No. 19-1687-CFC-CJB, 2020 WL 5646375, at *2 (D. Del. Sept. 22, 2020) ("[A] party cannot plausibly claim in a complaint that its adversary had knowledge of infringement of the patent-in-suit (required for both induced and contributory infringement claims) or had the specific intent to encourage another's infringement (required for an induced infringement claim) when, prior to the very moment that this complaint was filed, its adversary had never actually: (1) been aware of the patent's existence; (2) known that the patent was being infringed; or (3) intended that anyone infringe the patent."); *see also Xpoint Techs., Inc. v. Microsoft Corp.*, 730 F. Supp. 2d 349, 357 (D. Del. 2010) ("However, knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement."); *Dynamic Data Techs., LLC v. Brightcove Inc.*, No. 19-1190-CFC, 2020 WL 4192613, at *3 (D. Del. July 21, 2020) ("[T]he complaint itself cannot be the source of

knowledge required to sustain claims of induced infringement." (citing *VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019))); *Everlight Elecs. Co., Ltd. v. Bridgelux, Inc.*, No. C 17-03363-JWS, 2018 WL 5606487, at *3 (N.D. Cal. Sept. 14, 2018) ("This Court remains convinced to follow the line of authorities finding that knowledge after filing of the present action is not sufficient for pleading the requisite knowledge for indirect infringement." (citation omitted)).

### 3.   Kajeet's Boilerplate Allegations Do Not State a Claim for Induced or Contributory Infringement

Kajeet's indirect infringement allegations also fail because they are boilerplate, high-level, and unspecific.  In fact, Kajeet appears to have simply copy-pasted the same conclusory allegations of induced and contributory infringement from complaints it filed against other companies, including Norton and McAfee, simply changing the company name to Mosyle.[4]

With respect to induced infringement, Kajeet alleges that "Mosyle knows that the Accused Products are especially designed for and marketed toward the infringing use by Mosyle's customers, to implement feature management of computing devices" and that "[s]uch content was intended to and actually did result in direct infringement by Mosyle's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States."  (D.I. 1 at ¶ 42.)  The complaint also alleges that Mosyle "has induced, caused, urged, encourage, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products" and "provides step-by-step instructions for installation, setup, and the use of the Accused Products to infringe."  (*Id.*)

---

[4]    Specifically, paragraphs 42-43 from the complaint filed against Mosyle are nearly identical to paragraphs 42-43 in the complaints filed against Norton and McAfee.

Kajeet does not cite to *any* evidence or specific facts to support these induced infringement allegations.  The closest Kajeet comes is when it states that "[t]hese instructions are provided by Mosyle as user manuals and online content made available by Mosyle through its website."  (*Id.*)  But Kajeet provides no information regarding what specific instructions constitute the inducing act, how those instructions relate to infringement of the '559 patent, or whether those instructions were created and/or provided to customers once Mosyle had knowledge of the asserted patents.  Kajeet also does not identify any customers who supposedly were caused to directly infringe as the result of Mosyle's conduct.  And because there is no specific identification of what "user manuals and online content" (*id.*) allegedly resulted in direct infringement of the '559 patent, it is impossible for Mosyle to determine the facts underlying Kajeet's induced infringement allegations.

Such high-level and conclusory assertions are insufficient to plead induced infringement under the law.  *See Dodots Licensing Solutions LLC v. Lenovo Holding Co., Inc.*, No. 18-098 (MN), 2018 WL 6629709, at *4 (D. Del. Dec. 19, 2018) (dismissing induced infringement claims because "[a]lthough Plaintiff cites Defendants' website as support for its allegation, it does so generically and does not identify any particular statement or material that plausibly suggests Defendants intend to induced infringement of the Patents-in-Suit").

Kajeet's contributory infringement allegations are similarly flawed.  Kajeet alleges that "[t]he Accused Products were especially designed for controlling use of computing devices in the manner described above" and that "[u]pon information and belief, the Accused Products have no substantial non-infringing use, as they are specially designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication

network." (*Id.* at ¶ 43.)  The complaint additionally alleges that "[s]etup and use of the Accused

Products by Mosyle's customers in the [sic] manner constitutes direct infringement." (*Id.*)

As with Kajeet's induced infringement allegations, Kajeet fails to cite to any evidence or

specific facts supporting its contributory infringement allegations.  Instead, Kajeet simply makes

high-level statements that amount to legal conclusions, not factual allegations.  The statements in

paragraph 43 of the complaint are simply too high-level and unsupported to state a plausible

claim of contributory infringement.  They amount to "nothing more than 'if you use this device

to perform the patented method, the device will infringe and has no noninfringing uses.'" *In re*

*Bill of Lading Transmission and Processing Sys. Patent Litigation*, 681 F.3d 1323, 1338 (Fed.

Cir. 2012); *see also Pragmatus Telecom, LLC v. Ford Motor Co.*, No. 12-92-RGA, 2012 WL

2700495, at *1 (D. Del. July 5, 2012) (dismissing contributory infringement claim because the

plaintiff's allegation that the infringing systems have no substantial non-infringing uses "are

supported by no facts").

### C.      Kajeet's Willful Infringement Claims Should Be Dismissed

To state a claim for willful infringement, a plaintiff "must allege that the accused

infringer knew of the patent-in-suit and knowingly or intentionally infringed the patent after

acquiring that knowledge." *NNCrystal US Corp. v. Nanosys, Inc.*, No. 19-1307-RGA, 2020 WL

616307, at *4 (D. Del. Feb. 10, 2020).  As with indirect infringement, the knowledge

requirement for willful infringement presents a problem for Kajeet because it has not alleged pre-

suit knowledge of the '559 patent.  Courts in this district have held that willful infringement

allegations cannot survive a motion to dismiss where the defendant is alleged to first have

learned of an asserted patent when the complaint was filed.  *See Valinge Innovation AB v.*

*Halstead New England Corp.*, No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29,

2018) (holding "to state a claim for willful infringement, the patentee must allege facts in its

pleading plausibility demonstrating that the accused infringer had committed subjective willful infringement as of the date of the filing of the willful infringement claim"); *Express Mobile, Inc., v. DreamHost LLC*, No. 1:18-cv-01173-RGA, 2019 WL 2514418, at *2 (D. Del. Jun. 18, 2019) (dismissing willful infringement claims because "[t]he complaints allege only post-filing knowledge of the alleged infringement" and "[t]hus, they fail to meet the pleading standard for willful infringement, which requires allegations of willful conduct prior to the filing of the claim").  Because the complaint lacks any allegation of pre-suit knowledge by Mosyle of the '559 patent, Kajeet's willful infringement claim must be dismissed.

### D.    Kajeet's Claim for Past Damages Should Be Dismissed

Kajeet asserts infringement of "at least claim 27" and "reserves the right to assert additional claims of the '559 Patent against Mosyle."  (D.I. 1 at ¶¶ 41, 44.)  Claim 27 is a method claim, but most of the remaining claims of the '559 patent are product claims.  Because Kajeet reserves the right to assert product claims against Mosyle, Kajeet has the burden to show that it complied with the patent-marking statute.  *See Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).  As such, courts have held that, at the motion to dismiss stage, "[a] claim for past damages requires pleading compliance with the marking statute—even when compliance is achieved, factually, by doing nothing at all."  *Express Mobile*, 2019 WL 2514418 at *2 (D. Del. Jun. 18, 2019) (dismissing past damages claim due to failure to plead compliance with marking statute).  Because Kajeet failed to plead any facts related to compliance with the marking statute, its claim for pre-suit damages should be dismissed as a matter of law.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Mosyle respectfully requests that the Court dismiss Kajeet's direct, indirect, and willful infringement claims, as well as its claim for past damages.

Dated:  February 25, 2021      FISH & RICHARDSON P.C.


By:  */s/ Nitika Gupta Fiorella*
      Nitika Gupta Fiorella (#5898)
      222 Delaware Avenue, 17th Floor
      Wilmington, DE  19899
      (302) 652-5070
      fiorella@fr.com

      Lawrence Kolodney
      Joy B. Kete
      FISH & RICHARDSON P.C.
      1 Marina Park Drive
      Boston, MA 02210
      (617) 542-5070
      kolodney@fr.com
      kete@fr.com


      ***Attorneys for Defendant, Mosyle Corporation***